**RINEHART, Successor Grdn.; Ohio Farmers Insurance Company, Appellant,**

v.

**BANK ONE, COLUMBUS, N.A., Appellee.**

[Cite as *Rinehart v. Bank One, Columbus, N.A.* (1998), 125 Ohio App.3d 719.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APF06–796.

Decided March 31, 1998.

720

722

*McNamara & McNamara, William H. Woods* and *Jonathan M. Bryan,* for appellant Ohio Farmers Insurance Company.

*Sebaly, Shillito & Dyer, James A. Dyer* and *Martin A. Beyer,* for appellee Bank One, Columbus, N.A.

---

DESHLER, Presiding Judge.

Plaintiff-appellant, Ohio Farmers Insurance Company ("Ohio Farmers"), has brought this appeal from a judgment of the Franklin County Court of Common Pleas, Probate Division, in favor of defendant-appellee, Bank One, Columbus, N.A. ("Bank One"), on Ohio Farmers' complaint alleging that Bank One allowed a guardian to wrongfully withdraw certain funds from a guardianship account.

Ohio Farmers, a bonding company, initiated this case in an attempt to hold Bank One liable for a court-appointed guardian's theft of his ward's funds. On September 28, 1992, Glenn Parks was appointed guardian over the person and estate of his mother, Virginia L. Parks. At that time, the probate court issued its letters of guardianship to Glenn Parks, which mirrored the form letters of guardianship found in C.P.Sup.R. Form 15.4. Included in the letters of guardianship was language stating that "the above-named Guardian has the power conferred by law to do and perform all the duties of Guardian except as limited above; however, no expenditures shall be made without prior Court authorization." The letters of guardianship contained no further specific limitation upon Glenn Parks' powers as guardian. The letters also contained the following notice:

**"NOTICE TO FINANCIAL INSTITUTIONS**

"Funds being held in the name of the within named *ward* shall not be released to the Guardian without a Court Order directing release of a specific fund and amounts thereof." (Emphasis added.)

At the time of his appointment as guardian, Glenn Parks obtained a $20,000 guardian's bond from Ohio Farmers. The record indicates that Ohio Farmers later increased the bond to $245,000.

On February 11, 1993, Glenn Parks filed an "Application for Authority to Expend Funds" with the probate court. Proposed expenditures listed on this application included attorney fees due to Thomas Horvath for legal representation of the ward; a lump sum payment to Yorkshire Health Center for care of the ward in the amount of $16,231; and future monthly payments to Bon--Ing Care Center of approximately $2,600 per month. From the record, this appears to be the only application to approve expenditure of funds that was filed with the probate court by Glenn Parks.

Glenn Parks opened a guardianship checking account with Bank One on February 16, 1993. In connection with the checking account opened by Parks, Bank One was furnished copies of the above-quoted letters of guardianship, and of the judgment entry appointing Parks as guardian for Virginia Parks. Bank One issued a debit card to Glenn Parks with which he could make point-of-sale purchases or automated teller machine withdrawals upon the account. Over the course of the next year, Glenn Parks proceeded to dissipate in excess of $73,000 in estate assets from the Bank One account, by means of debit card transactions, ATM withdrawals, counter checks, and personal checks drawn for improper purposes. In addition, a number of checks were drawn upon the account for the proper purpose of paying for Virginia Parks's care and maintenance. Glenn Parks was subsequently removed as guardian, and attorney Adam R. Rinehart was appointed successor guardian of Virginia Parks.

Pursuant to its bond issued to Glenn Parks, Ohio Farmers subsequently paid Rinehart, as successor guardian, $103,266.16 for amounts wrongfully taken by Glenn Parks in the amount of $73,760.45 from the Bank One account and $29,505.71 from a separate account with National City Bank, Columbus. In exchange for the payment from Ohio Farmers, the successor guardian gave Ohio Farmers a release and assignment of "any and all claims, demands, rights and causes of action" accruing to the successor guardian. A judgment entry of the probate court dated April 6, 1995, approved the successor guardian's settlement with Ohio Farmers, and the execution of the release pursuant to the settlement agreement. Ohio Farmers then obtained a default judgment against Glenn Parks in the general division of the court of common pleas, but has apparently been unable to collect from Glenn Parks any amount due pursuant to the judgment.

The present action was filed on March 6, 1997, by Rinehart and Ohio Farmers, against Bank One and National City Bank, Columbus. (Plaintiffs eventually dismissed their action against National City Bank, which is no longer a party to this action.) The plaintiffs sought recovery of amounts "wrongfully conveyed" by the banks pursuant to R.C. 2109.50 et seq., which provides a special statutory mechanism for recovery of concealed or wrongfully conveyed estate assets. Ohio Farmers also asserted that it was entitled to recover from the banks "under the common law of Ohio."

The probate court held a hearing on the matter on April 30, 1997, and proceeded on the facts as stipulated by the parties. The sole plaintiffs' exhibit rejected by the court was the affidavit of former Franklin County Probate Judge Richard Metcalf, which the court rejected as addressing legal, rather than factual, issues in the case. The probate court entered its judgment on June 2, 1997, dismissing plaintiffs' complaint in its entirety on a variety of grounds. The court initially "questioned" whether it had jurisdiction over the matter because plain-

tiffs had already obtained a judgment against Glenn Parks, and in the court's view, the action against Bank One was not one in which the court had jurisdiction over either in equity or under R.C. 2109.50. The court further found that the successor guardian did not have standing to seek the ten percent statutory penalty under R.C. 2109.50 because the guardianship had been fully compensated for its losses by Ohio Farmers pursuant to its bond, and the successor guardian had assigned all claims to Ohio Farmers. The trial court also stated:

"[R]egardless of whether the Court had jurisdiction, the Court questions whether Ohio Farmers was a proper party to bring the claim. Ohio Farmers had an obligation to honor the Guardianship Bond with Glenn Parks. The Court doubts Ohio Farmers had any authority to sue Bank One. * * *

"Regardless of whether the Court had jurisdiction and Plaintiffs had standing, Bank One was not the proper Defendant in this case. The proper Defendant was Glenn Parks, who was not made a party."

Finally, the probate court concluded that Bank One had no duty to exercise control over Glenn Parks's spending of the funds in the Bank One account, because the account was an uncontrolled guardianship account, which placed no supervisory duty upon the bank. The court distinguished between custodial accounts and guardianship accounts, finding that a bank is held to restrict disbursements from a custodial account to those authorized by the courts, but no such restriction exists with respect to guardianship accounts. The court found that the Notice to Financial Institutions contained on the letters of guardianship referred only to limitations on disbursement of funds held in the name of the ward, not to those held in the name of the guardianship. The probate court accordingly dismissed with prejudice plaintiffs' complaint in its entirety. While the basis for dismissal is not given in the court's entry, the matter appears to have been dismissed for failure to state a claim under Civ.R. 12(B)(6).

The successor guardian has chosen not to appeal from the probate court's judgment. Ohio Farmers has timely appealed and brings the following eleven assignments of error:

"I. The probate court's first conclusion of law erroneously questions the probate court's subject matter jurisdiction to adjudicate the plaintiffs' claims against Bank One under R.C. 2109.50, but does not decide the issue.

"II. The probate court's second conclusion of law erroneously questions the successor guardian's right to join in the Complaint to recover the statutory ten percent provided by R.C. 2109.50. But, after holding that the successor guardian properly assigned the right to recover the ten percent statutory penalty to Ohio Farmers, the probate court erroneously failed to hold that Ohio Farmers has standing to assert the fiduciary's claim for the ten percent statutory penalty.

"III. The probate court's first conclusion of law erroneously questions the probate court's subject matter jurisdiction based upon Ohio Farmers' unsatisfied judgment against Glenn Parks because the unsatisfied judgment is irrelevant to the probate court's subject matter jurisdiction under R.C. 2109.50 *et seq.*

"IV. The probate court's first conclusion of law erroneously held that the probate court lacked subject matter jurisdiction over Ohio Farmers' claims for a money judgment against Bank One. Ohio Farmers' *complaint* asserts the surety's well established equitable subrogation rights.

"V. The probate court's fourth conclusion of law erroneously holds that Glenn Parks—not Bank One—was the only proper party defendant to a complaint under R.C. 2109.50 and a civil action based upon Ohio Farmers' common-law rights.

"VI. The probate court's first conclusion of law erroneously 'questions whether [the court] had jurisdiction over this matter,' but does not decide the issue. Subject matter jurisdiction over a controversy is the first issue that a court of limited jurisdiction must decide before adjudicating a case on the merits. If the probate court lacked subject matter jurisdiction, the June 2, 1997 judgment in Bank One's favor on the merits is void and should be reversed.

"VII. The probate court erroneously failed to conduct the hearing under R.C. 2109.50 in accordance with the special substantive and procedural requirements of R.C. 2109.50 and 2109.52. The probate court's failure to follow the statutory requirements denied Ohio Farmers due process of law as guaranteed by the Ohio Constitution.

"VIII. After the probate court dismissed Ohio Farmers' claims under R.C. 2109.50 at the special statutory hearing, the *probate court's final judgment entry* erroneously dismissed Ohio Farmers' common-law claims on the merits. The probate court should have scheduled the common-law claims for a later adjudication based upon the procedures stated in the Ohio Rules of Civil Procedure. The dismissal of its common-law claims on the merits without discovery or a hearing denied Ohio Farmers due process of law under the Ohio Constitution.

"IX. The probate court's third conclusion of law doubting Ohio Farmers' authority to sue Bank One is erroneous because Ohio Farmers has a right to sue Bank One on three grounds: (1) Ohio Farmers, as the surety for former guardian Glenn Parks, is a 'person interested in such trust estate' under R.C. 2109.50; (2) Ohio Farmers is the assignee of the successor guardian's rights, including his rights under R.C. 2109.50; and (3) Ohio Farmers has a common-law right to assert legal and equitable claims against Bank One.

"X. The probate court's fifth conclusion of law, deciding the merits of Ohio Farmers' claims against Bank One, is erroneous because it ignores the estab-

lished common-law duty of a person dealing with a fiduciary to inquire into a fiduciary's authority to enter into a transaction on behalf of a trust estate, and it ignores the express terms of the Standard Form *Letters of Guardianship*. By absolving Bank One of liability for failing to make the inquires required by Ohio common law and the Standard Form *Letters of Guardianship*, the probate court erroneously eliminated a critical component of Ohio's system of protecting the assets of incompetent persons.

"XI. The probate court's fifth conclusion of law, deciding the merits of Ohio Farmers' claims against Bank One, is erroneous because it gives financial institutions the right to issue ATM and debit cards to fiduciaries, even though no statute, rule of court or court decision authorizes a financial institution to issue an ATM or debit card to a fiduciary. The probate court's decision without even discussing the issue erroneously authorizes financial institutions to issue ATM and debit cards to fiduciaries." (Emphasis *sic.*)

██ Although Bank One asserted in probate court that the court lacked subject matter jurisdiction over the complaint, Bank One now concedes in its brief upon appeal that the court could accept jurisdiction. Bank One would thus concede Ohio Farmers' first, third, fourth, fifth, sixth, and ninth assignments of error. Nonetheless, because subject matter jurisdiction is a threshold question that would have prevented the probate court from reaching the underlying issues in the case, and because it is axiomatic that the parties may not waive the issue in a court of limited jurisdiction, see, *e.g., Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536, we must first address the question of whether the probate court could properly exercise jurisdiction over Ohio Farmers' claim against Bank One.

R.C. 2101.24(A)(1)(d) provides:

"Except as otherwise provided by law, the probate court has exclusive jurisdiction:

" * * *

"To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts[.]"

██ The probate court has "plenary power at law and in equity to fully dispose of any matter properly before the court." *Wolfrum v. Wolfrum* (1965), 2 Ohio St.2d 237, 31 O.O.2d 501, 208 N.E.2d 537, paragraph one of the syllabus.

██ R.C. 2109.50 specifically creates in the probate court jurisdiction over complaints by persons interested in a trust estate against fiduciaries or any other person suspected of having concealed or misappropriated an estate asset:

"Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or chooses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.  * * * "

■■ The original complaint in this matter clearly stated that the action was brought against Bank One on the theory that Bank One had "conveyed away" funds belonging to the ward, by permitting the prior guardian, Glenn Parks, to withdraw funds for impermissible purposes.  Ohio Farmers brought the claim as the subrogated surety of the former guardian.  A financial institution that conveys money in its possession to an unauthorized individual comes within the provisions of R.C. 2109.50.  *In re Estate of Popp* (1994), 94 Ohio App.3d 640, 646, 641 N.E.2d 739, 742–743, jurisdictional motion overruled (1994), 70 Ohio St.3d 1446, 639 N.E.2d 114.  A logical extension of this rule is that a financial institution that conveys funds to an authorized person but under circumstances giving rise to liability to the estate would also fall within the ambit of R.C. 2109.50.  We therefore hold that to the extent that the trial court expressed "doubts" over its subject matter jurisdiction and whether Bank One was a proper party defendant to an R.C. 2109.50 action, such doubts were not well taken, and the probate court properly proceeded to address the merits of the action.  Ohio Farmers' first, third, fourth, fifth, sixth, and ninth assignments of error are therefore sustained, to the extent that they establish the necessary prerequisite of subject matter jurisdiction in the probate court in order to reach the substantive issues in this case.

■ We shall now address Ohio Farmers' second assignment of error.  R.C. 2109.52 provides that a court shall impose a ten percent statutory penalty upon any party found guilty of embezzling or wrongfully conveying away estate assets.  Ohio Farmers asserts that the trial court erred in finding that it was not entitled to recover the ten percent statutory penalty based upon its subrogation rights granted by the successor guardian.  A review of the complaint reveals that only the successor guardian, attorney Rinehart, is named as seeking this relief in the complaint.  The successor guardian has not appealed from the judgment of the probate court.  Ohio Farmers therefore does not have standing to, in effect, amend its complaint upon appeal to assert error on the part of the probate court

in failing to award the statutory penalty. Ohio Farmers' second assignment of error is accordingly overruled.

We shall next address Ohio Farmers' tenth and eleventh assignments of error, which are at the crux of this case. Ohio Farmers asserts that the trial court erred in finding that Bank One could release funds from the guardianship account to the guardian either by means of counter check, personal checks, or debit card transactions, when the letters of guardianship that were presented to the bank barred any release of the ward's funds without court authorization, and in violation of a common-law duty to inquire into the authority of the fiduciary to disburse the funds.

It is undisputed in this matter that the former guardian, Glenn Parks, obtained only a single order from the probate court authorizing specific expenditures related to past and present nursing home care for the ward. It is also undisputed that Glenn Parks made numerous withdrawals from the Bank One account that were not within the scope of the probate court order authorizing expenditures. The issue is whether Bank One had a duty to impose limits on such withdrawals by the former guardian.

We shall first examine whether such a duty is imposed by the terms of the letters of guardianship issued by the probate court upon appointment of Glenn Parks as guardian. As noted above, the letters contained the following "notice to financial institutions": "Funds being held in the name of the within-named *Ward* shall not be released to the Guardian without a Court Order directing release of a specific fund and amounts thereof." (Emphasis added.) Ohio Farmers asserts that this notice created a duty on the part of Bank One not to permit any withdrawals by check or otherwise unless specifically authorized by order of the probate court. In deciding in favor of Bank One, the probate court held that, while the notice in the letter of guardianship may impose a restriction upon withdrawals from a custodial account in the name of the *ward*, it would not apply to funds held in the name of the *guardianship*, as in the present case. In the view of the probate court, "Bank One had every legal right to disburse the funds at issue without this court's prior approval." The probate court's reasoning was that the restraint upon the guardian's use or misuse of guardianship funds comes from the probate court itself, through the annual accounting required by R.C. 2109.30(A), and the court's authority to order an accounting at any time.

Neither party to this appeal has presented any directly controlling authority that would support either position with respect to the effect of the letters of guardianship upon a financial institution maintaining a guardianship account. The probate court's decision appears to be based largely upon its own procedural practice in such matters, and the court simply did not accept Ohio Farmers' proposition that a financial institution may disburse funds from a guardianship

account only when presented with a court order authorizing the specific expenditure in question. The ramifications of the scheme of total, detailed, control over all expenditures which Ohio Farmers proposes, were doubtless more apparent from the vantage point of a probate judge familiar with accepted probate practice and the most expeditious means of safeguarding interests and serving the needs of all parties appearing before the probate court. In the absence of authority to the contrary, we defer to the permissible interpretation made by the probate court of the wording in the letters of guardianship and find that this language, of itself, imposed no duty upon Bank One to control disbursements from the guardianship account.

As an alternative basis to support its argument that Bank One made an improper conveyance of the ward's funds and thus is liable under R.C. 2109.50, Ohio Farmers cites several older cases for the proposition that a person or financial institution dealing with a fiduciary is bound to inquire into the authority of the fiduciary to withdraw funds or execute a transaction. Bank One responds by referring to the Uniform Fiduciary Act, codified in Ohio at R.C. 1339.03 *et seq.*, which states in part:

"If a check is drawn upon his principal's account by a fiduciary who is empowered to do so, the bank may pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation * * * or with knowledge of such facts that its action in paying the check amounts to bad faith." R.C. 1339.09.

Ohio's enactment of the Uniform Fiduciary Act was intended to facilitate commerce by relieving banks of the common-law obligation to ensure that a fiduciary properly uses funds for the principal's benefit. *Master Chem. Corp. v. Inkrott* (1990), 55 Ohio St.3d 23, 26, 563 N.E.2d 26, 29. "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive is not responsible for the proper application thereof by the fiduciary." R.C. 1339.04. In instances in which a bank deals with a known fiduciary, in order to establish liability for misappropriations by the fiduciary, "it must show that the bank had actual knowledge of the fiduciary's breach of the fiduciary obligation, or that the bank had knowledge of such facts that its actions in paying the checks amounted to bad faith, or that the fiduciary was indebted to the bank and the funds were applied to that indebtedness." *Master Chemical Corp.* at 27, 563 N.E.2d at 30. The Supreme Court in *Master Chemical Corp.* defined "actual knowledge" as "awareness at the moment of the transaction that the fiduciary is defrauding the principal." *Id.* at 28, 563 N.E.2d at 30. While "bad faith" is not defined in the Uniform Fiduciary Act, the Supreme Court in *Master Chemical Corp.* noted that it must be taken as the absence of "good faith," defined in R.C. 1339.03(E) as "an act when it is in fact

done honestly." The Supreme Court further noted that bad faith " 'imports a dishonest purpose and employs wrongdoing or some motive of self-interest.' " *Id.* at 27, 563 N.E.2d at 31, quoting *Smith v. Halverson* (S.D.1978), 273 N.W.2d 146, 151.

Ohio Farmers seeks to distinguish prior cases applying the Uniform Fiduciary Act on the basis that the present matter involved, at least in part, withdrawals made by means of a debit card issued by Bank One, or by means of counter checks. Ohio Farmers also asserts that, of itself, the issuance of a debit card to a guardian would create liability on the part of the bank for misappropriations by the guardian, because issuance of such a card is not permitted under Ohio statute or probate court rule.

Bank One correctly points out that, if no rule or statute can be found expressly authorizing issuance of such a debit card to a guardian, neither can Ohio Farmers point to any legal bar to the issuance of such a card. As the probate court stated at the hearing, while it may be unwise for a guardian to accept a debit card and make transactions with it on behalf of the guardianship because of potential difficulty in documenting the propriety of his transactions, there was no express probate court rule or policy prohibiting the issuance of debit cards by banks maintaining guardianship accounts.

With respect to the distinction between debit card transactions, which are not mentioned in the Uniform Fiduciary Act, and checks, which are expressly covered by the provisions of R.C. 1339.09, cited above, we note that at least one court has held that the word "check," as used in the Uniform Fiduciary Act, can be interpreted to include wire transfers of funds. *Richards v. Platte Valley Bank* (C.A.10, 1989), 866 F.2d 1576. The decision in *Richards* was cited with approval in *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18, in which the Supreme Court noted that courts are faced with interpretating statutory language that has often lagged behind technological banking reality as the national banking system shifts from a paper-based check processing system to one of electronic transfers, both at an interbank and consumer transaction level. We see no reason, drawing upon the stated purpose of the Uniform Fiduciary Act, to distinguish in the present case between debit card transactions and those made by check. We accordingly find that the issuance of a debit card to the former guardian did not, of itself, establish liability on the part of Bank One, nor that transactions made with the debit card fell outside the scope of the Uniform Fiduciary Act.

It is apparent from the record before us that Ohio Farmers presented no evidence, either through testimony or submitted exhibits, to support a finding that Bank One acted with actual knowledge of Glenn Parks's misapplication of guardianship funds, and thus rebut the defense asserted by Bank One under the Uniform Fiduciary Act. This failure to present evidence, however, is in part a

result, Ohio Farmer asserts, of a general denial by the trial court of an opportunity to present such evidence, and otherwise be granted an opportunity to properly argue Ohio Farmers' case and present evidence in support of it. This naturally leads us to address Ohio Farmers' due process arguments raised in Ohio Farmers' seventh and eighth assignments of error.

A proceeding for a discovery of concealed or embezzled assets of an estate brought under R.C. 2109.50 is a special statutory proceeding of a summary and inquisitorial character that is quasi-criminal in nature. Its purpose is to facilitate the administration of estates by providing an expeditious means for bringing into such estates those assets that rightfully belong to the estate. *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185. The purpose of this section is not to furnish a substitute for a civil action to recover a judgment for money owing to an administrator, but rather to provide a speedy and effective method for discovering assets belonging to the estate and to secure possession of them for purposes of administration. *Goodrich v. Anderson* (1940), 136 Ohio St. 509, 17 O.O. 152, 26 N.E.2d 1016 (construing predecessor statute). It has been held by the Supreme Court of Ohio that resort to this statute may not be had in order to collect a debt, obtain an accounting, or adjudicate the rights of the estate or guardian under a contract. *Id.* Despite the quasi-criminal nature of an action under R.C. 2109.50, the Rules of Civil Procedure, as practiced in the probate court, are applicable to such a proceeding. *In re Estate of Popp, supra,* 94 Ohio App.3d at 649, 641 N.E.2d at 744–745.

Ohio Farmer contends that it was not afforded due process in several respects. First, Ohio Farmers contends that the probate court failed to follow the procedural requirements of R.C. 2109.50 *et seq.* Second, Ohio Farmers argues that the probate court either should have scheduled Ohio Farmers' common-law claims separately from its R.C. 2109.50 claims, to be heard in a proceeding not subject to the expedited procedures applicable to an R.C. 2109.50 claim, or, in the alternative, transferred the common-law claim to the general division of the common pleas court. Third, Ohio Farmers contends that the probate court in essence converted a motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6) into a motion for summary judgment, without giving a proper notice to the parties that the outcome of the matter would be decided in accordance with Civ.R. 56 governing summary judgment. Bank One responds that Ohio Farmers has waived any objection to the procedure employed in the probate court by failing to object and thus preserve the issues for appellate review, and in fact by acquiescing to have the matter heard on stipulated evidence.

As we noted above, the probate court appears to have decided all claims through dismissal pursuant to Civ.R. 12(B)(6) for failure to state a claim. In order to assess whether this was appropriate as to some or all of Ohio

Farmers' claims, we must first determine the interaction between what Ohio Farmers has chosen to designate as its statutory (pursuant to R.C. 2109.50) and common-law claims against Bank One. Neither party has presented us with legal precedent, nor has our own research revealed any, which would clarify the interplay between an action simultaneously brought in the probate court pursuant to R.C. 2109.50 and under another, parallel, theory of recovery against a person alleged to have conveyed away estate funds. Ohio Farmers' position in this appeal appears to be that, having failed to prevail in the streamlined proceedings pursuant to R.C. 2109.50, it was entitled to a second bite at the apple in a full adversarial proceeding on its "common law claims." As to this issue, case law does exist to the contrary. An adjudication in an inquisitorial proceeding pursuant to R.C. 2109.50 will collaterally estop a party attempting to retry similar issues under another theory of recovery. *Hamilton v. Bancohio Natl. Bank* (Apr. 17, 1986), Franklin App. No. 85AP–1064, unreported, 1986 WL 4655. In the present case, Ohio Farmers has not established that its cause of action for wrongful dealings with a fiduciary requires any different state of the facts or law than would be required to recover under R.C. 2109.50; the only difference in a later proceeding would be procedural, if the probate court were to have decided against Ohio Farmers in the earlier R.C. 2109.50 action. *Res judicata* would therefore apply were the probate court to have correctly decided all issues in the R.C. 2109.50 proceeding, and no subsequent full adversarial proceeding would be available to Ohio Farmers. In essence, the decision to pursue an R.C. 2109.50 streamlined inquisitorial proceeding must be taken as an election of remedies in those cases where there is mutuality of parties and identity of factual issues, and a party pursuing this judicially economical remedy accepts the risk that *res judicata* will foreclose proceedings in another form, as would any litigant faced with a choice of procedural or geographical venues. It therefore was not error for the trial court to discuss Ohio Farmers' common-law claim, at least assuming that the probate court's dismissal was appropriate in other respects.

With respect to Ohio Farmers' contention that the probate court failed to follow the procedures mandated in R.C. 2109.50, we find that Bank One's assertion of waiver by Ohio Farmers on these issues has at least partial merit. The transcript reveals that Ohio Farmers acquiesced to present its case upon stipulated evidence, and indeed the facts in the present matter were in most respects undisputed. The court did conduct its own inquisitorial hearing, which would have been sufficient to establish that, from the face of the complaint, certain elements of Ohio Farmers' claims could be dismissed pursuant to Civ.R. 12(B)(6), particularly Ohio Farmers' contention that the letters of guardianship created, as a matter of law, a duty on the part of Bank One to supervise the withdrawals made by the former guardian. There appears from the transcript to have been considerable confusion about the scope of the hearing, however, and in

fact the transcript reveals that the trial court never discussed, nor did the parties have the opportunity to argue, Ohio Farmers' contention that the common-law duty of one dealing with a fiduciary was breached by Bank One, giving rise to a wrongful conveyance of the estate assets; nor were Bank One's affirmative defenses under the Uniform Fiduciary Act discussed. Because, as set forth above, resolution of this last issue requires a factual determination which could not have been made from the face of the complaint, we find that the probate court did err in this respect.

When ruling upon an motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6), a trial court must presume that all the factual allegations of the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. A trial court must not grant a motion to dismiss a failure to state a claim unless "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. "A court must notify all parties that it has converted a motion to dismiss for failure to state a claim into a motion for summary judgment 'at least fourteen days before the time fixed for hearing.'" *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285, syllabus. Although the present matter was styled as a dismissal by the probate court, it was decided as upon summary judgment in some respects. As we discussed above, there remained a genuine issue of material fact as to whether Bank One had actual notice of the misapplication of estate funds by the former guardian, and thus whether or not Bank One can invoke the protection of the Uniform Fiduciary Act. The probate court thus erred in dismissing this aspect of Ohio Farmers' complaint without giving notice to the parties, and without affording Ohio Farmers the opportunity to present evidence and argument in support of this aspect of its case. Although we recognize that R.C. 2109.50 calls for an inquisitorial proceeding, in the present case the inquisition never proceeded to an essential aspect of Ohio Farmers' case. Ohio Farmers' seventh and tenth assignments of error have merit and are therefore sustained to the extent outlined in the above discussion.

In summary, we find that the probate court did not err in accepting jurisdiction over the claims and parties in this matter. Ohio Farmers' first, third, fourth, fifth, sixth, and ninth assignments of error have merit and are sustained, but only to the extent that the probate court expressed "doubt" about its subject matter jurisdiction, and about whether the proper parties to the action were present. The probate court did not err in finding that Ohio Farmers was not entitled to pursue the statutory ten percent penalty under R.C. 2109.52 because the complaint sought recovery of the penalty only in the name of the successor guardian.

Ohio Farmers' second assignment of error is thus overruled. The probate court did err in dismissing, as upon summary judgment, Ohio Farmers' claim under R.C. 2109.50 to the extent that it was based upon the possibility that Bank One had actual knowledge of the improper transactions by the former guardian but did not err in finding that the letters of guardianship did not impose a duty upon the bank to make disbursements only with a specific court order. Ohio Farmers' seventh, eighth, and tenth assignments of error are sustained in part and overruled in part. Finally, we find that the probate court did not err in failing to find, as a matter of law, that Bank One conveyed away estate assets based solely upon the issuance to the former guardian of a debit card and issuance of counter checks by which the improper transactions were made. Ohio Farmers' eleventh assignment of error is therefore overruled.

The judgment of the Franklin Count Court of Common Pleas, Division of Probate, is affirmed in part and reversed in part, and this matter shall be remanded to the probate court for further proceedings pursuant to R.C. 2109.50 to establish whether Bank One had actual knowledge of the misappropriation of estate funds by the former guardian and thus cannot invoke the Uniform Fiduciary Act as a defense to the claim that it improperly conveyed estate assets to the former guardian.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded with instructions.*

PETREE, J., concurs.

CLOSE, J., concurs separately.

CLOSE, Judge, concurring.

I concur only to emphasize two points. One is that we recognize a substantial difference between controlled accounts and regular fiduciary accounts.

By this opinion, we specifically decline to overturn the trial court's decision that Bank One had somehow established a controlled account. The trial court correctly interpreted the information presented to it.

The second issue is more a matter of semantics. It is unclear from the trial court's opinion whether or not this case was actually dismissed pursuant to Civ.R. 12(B), or whether, in fact, there was a ruling on a summary judgment motion. To the extent of the Civ.R. 12(B) dismissal, our holding states that appellant had an obligation but also should have an opportunity to produce evidence as to actual knowledge by Bank One. Failing that, appellant cannot win.

I do not necessarily agree with my colleagues that this is an action converted to summary judgment. If, in fact, it were converted to summary judgment, it would appear to me that the trial court would have granted judgment to Bank One, as opposed to dismissing appellant's case. As the trial court did not make clear its reason for its "dismissal," I presume that this action was dismissed under Civ.R. 12(B) and, as such, a remand for a factual hearing on the "actual knowledge" issue is appropriate.