DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from a Ross County Common Pleas Court summary judgment in favor of United Healthcare of Ohio, Inc., plaintiff below and appellee herein, on its claim against Alan J. Percival (Percival) and J.L. Corcoran Sons (Corcoran), defendants below and appellants herein. Percival and Corcoran assign the following error for our review:
 "THE TRIAL COURT ERRED BY IMPOSING LIABILITY FOR THE SUBROGATED MEDICAL BILLS UPON `DEFENDANTS' INCLUDING PERCIVAL AND CORCORAN SONS, WITHOUT GIVING EFFECT TO THE CONTRACT LANGUAGE AGREED TO AMONG THE `DEFENDANTS' AND STIPULATED INTO EVIDENCE, CLEARLY STATING THAT CLAIMS BY OTHER THIRD PARTIES WERE THE RISK OF DEFENDANT BLANEY."
Margie K. Blaney (Blaney), intervening defendant below and appellant herein, posits her own assignment of error as follows:
 "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND IN NOT GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT."
The operative facts in this case are relatively undisputed and can be briefly summarized as follows. On the morning of April 15, 1999, Blaney was driving her children to daycare in Chillicothe. While stopped on Western Avenue waiting to make a left-hand turn, Percival's vehicle crashed into the back of Blaney's car.[2] Blaney's three year old son, Wyatt Park, suffered extensive head injuries and was later "life flighted" to Children's Hospital in Columbus where he remained for several weeks.
Blaney thereafter initiated a personal injury claim against Percival and Corcoran on behalf of her son. The Ross County Probate Court created a guardianship for Wyatt, appointed his mother as guardian and gave Blaney authority to settle that claim. Blaney negotiated an agreement with Nationwide Insurance Company (Nationwide), Corcoran's liability insurer, to settle the case for $300,000.[3]
On October 17, 2000, Blaney filed an application for court approval of that agreement. In her application, Blaney explained that Nationwide's offer was not only for Wyatt's claim, but also for any derivative claim(s) that she and Wyatt's father may have. The problem, Blaney continued, was that Wyatt's medical expenses from the accident were paid by his father's insurance company, United Healthcare of Ohio, appellee herein, which had a right of subrogation to the extent of those payments. Any collection of proceeds from the settlement by appellee, in satisfaction of its subrogated interest, would reduce the amount of money available to compensate Wyatt for his injuries. Blaney asked the court for guidance on the matter and, because of their potentially adverse interests, to appoint a guardian ad litem to represent her son.
On November 9, 2000, appellee entered an appearance in the Probate Court and filed its "conditional opposition" to Blaney's application for approval of the settlement. Appellee alleged that it paid medical bills for Wyatt in excess of $35,000 and, pursuant to a subrogation provision in a health insurance policy for Wyatt's father, had an interest in the settlement proceeds to that extent. Appellee asked the court to reject "any proposed settlement of the claims of Wyatt A. Park . . . unless and until such time that the subrogation/right of reimbursement interests of United Healthcare of Ohio, Inc. has been protected."
The Ross County Probate Court filed an entry on November 30, 2000 and approved the settlement of Wyatt's claims for $300,000. Further, the court ordered that various distributions be made from that amount including "$0 for medical expenses to United Healthcare of Ohio, Inc."[4] The remaining monies, after payment of court costs, attorney fees, etc., were ordered to be deposited on account for Wyatt either until he reached the age of majority or until further order of the court.[5] Appellee did not appeal that judgment.
On December 3, 2000, appellee commenced the action below and alleged that (1) it was subrogated to the interests of Wyatt's father; (2) Percival and Corcoran were negligent and thus responsible for Wyatt's; injuries and (3) Percival and Corcoran were liable to reimburse appellee for medical bills paid on Wyatt's behalf. Appellee demanded compensatory damages against Percival and Corcoran in the amount of $35,521.79. Percival and Corcoran denied liability and asserted a variety of affirmative defenses that included the lack of subject jurisdiction and res judicata. Blaney intervened in the action and filed her own answer and denied that appellee had any right of recovery and asserted that the whole matter was res judicata given the aforementioned judgment of the Ross County Probate Court.[6]
Subsequently, the parties filed extensive joint stipulations of evidence. On July 2, 2001, Blaney then filed a motion for summary judgment and argued that no genuine issues of material fact existed in this case and that judgment should be entered against appellee as a matter of law. Specifically, Blaney argued that the common pleas court lacked subject matter jurisdiction over this case because probate court has exclusive jurisdiction over any issue related to a minor's personal injury claim. Blaney further argued that, jurisdiction aside, the probate court's November 30, 2000 entry conclusively determined the rights of the parties and that appellee was barred from pursuing the matter further under the doctrine of res judicata.
Appellee filed a combined motion for summary judgment and memorandum contra to Blaney's motion and argued that no genuine issues of material fact existed regarding its subrogated interest and that it was entitled to judgment against both Percival and Corcoran to the extent of that interest. With regard to Blaney's assertion that the common pleas court lacked subject matter jurisdiction, appellee argued that the probate court's grant of exclusive jurisdiction was not as extensive as Blaney argued and did not reach the claims being asserted herein. With regard to the res judicata issue, appellee argued that the probate court did not enter a final judgment on the question of its subrogated interest and that the court contemplated further action on the issue as indicated by its February 23, 2001 judgment that impounded the settlement funds until such time as the common pleas court resolved the action.
On September 7, 2001, the trial court issued a judgment in favor of appellee and against Percival, Corcoran and Blaney. First, the court concluded that appellee expended $35,521.79 for Wyatt's medical bills and was subrogated to the interests of his father in that amount. Second, with regard to subject matter jurisdiction, the court found that this claim is a separate subrogation claim that has nothing to do with the ward's personal injury settlement. Thus, the court concluded, the probate court did not have exclusive jurisdiction over the matter. Finally, on the res judicata issue the court found that no full adjudication of appellee's claim occurred in the probate court which thus negates operation of the doctrine. The court thus denied Blaney's motion for summary judgment and granted appellee's motion and awarded appellee $35,521.79 against Percival and Corcoran.[7]
Blaney filed a timely appeal and Percival and Corcoran filed a joint appeal separately. This Court consolidated those appeals and the matter is now before us for review and final determination.
 I
We first address Blaney's assignment of error wherein she asserts that the trial court erred in granting summary judgment for appellee and in denying her own motion for summary judgment. Our analysis begins from the premise that we review summary judgments de novo. See Broadnax v. GreeneCredit Service (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167; CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. That is to say we afford no deference to the trial court's decision, seeHicks v. Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; Dillonv. Med. Ctr. Hosp.(1993), 98 Ohio App.3d 510, 514-515, 648 N.E.2d 1375;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786, and conduct our own review to determine if summary judgment was appropriate. Woods v. Dutta (1997), 119 Ohio App.3d 228, 233-234,695 N.E.2d 18; Phillips v. Rayburn (1996), 113 Ohio App.3d 374, 377,680 N.E.2d 1279; McGee v. Goodyear Atomic Corp. (1995),103 Ohio App.3d 236, 241, 659 N.E.2d 317.
Summary judgment under Civ.R. 56(C) is appropriate when the movant can demonstrate that (1) there are no genuine issues of material fact, (2) it is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party; said party being entitled to have the evidence construed most strongly in their favor. Zivich v. Mentor SoccerClub, Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201;Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389,667 N.E.2d 1197; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46. With these principles in mind, we turn our attention to the proceedings below.
The facts in the case sub judice are not in dispute. No one contests the fact that appellee is subrogated to the interest of Wyatt's father, or that appellee paid $35,521.79 in medical bills on Wyatt's behalf. Also, those expenses were incurred because of Percival's and Corcoran's negligence. Blaney's arguments are, instead, directed at legal issues.
First, Blaney argues that the common pleas court did not have subject matter jurisdiction over appellee's claim. Blaney asserts that probate courts are vested with exclusive jurisdiction over the settlement of a minor's personal injury claim. Although we agree with her position as an abstract proposition of law, we believe that she carries that principle too far in this case.
The provisions of R.C. 2101.24(A)(1)(e)(s) vest probate courts with the exclusive jurisdiction to appoint guardians, to direct and control their conduct, to settle their accounts and to act for and issue orders regarding wards. Moreover, probate courts are deemed to be the superior guardian of wards subject to its jurisdiction. Guardians are directed to obey all orders of the court concerning their wards or guardianship. R.C. 2111.50(A)(1).
When a minor child has suffered a personal injury, a guardian may settle the child's claim with the advice, approval and consent of the probate court. R.C. 2111.18. These statutes make it clear that probate court jurisdiction extends to all matters which touch the guardianship and the personal injury claims of minors. See In re Guardianship ofDerakhsham (1996), 110 Ohio App.3d 190, 196, 673 N.E.2d 954; Ohio Dept.of Mental Health v. Baldauf (1995), 107 Ohio App.3d 467, 472,669 N.E.2d 39; In re Zahoransky (1985), 22 Ohio App.3d 75, 76,488 N.E.2d 944.
However, when a child sustains an injury as the result of negligence, two separate and distinct causes of action arise: an action by the child for his personal injuries and a derivative action in favor of the child's parents for loss of services and for medical expenses. Grindell v. Huber
(1971), 28 Ohio St.2d 71, 275 N.E.2d 614, at paragraph one of the syllabus; Whitehead v. Genl. Tel. Co. (1969), 20 Ohio St.2d 108,254 N.E.2d 10, at paragraph three of the syllabus. Thus, in the case sub judice, Wyatt's parents had a cause of action for the loss of his services and for the medical expenses they incurred as a result of his injuries. Because Wyatt's father had health insurance to cover Wyatt, and because the terms of that insurance provided for the right of subrogation for the insurance company to the extent of medical bills paid on Wyatt's behalf, that insurance company (appellee) now stands in the position of Wyatt's father to the extent of the $35,521.79 it paid for Wyatt's medical expenses.[8] While the Ross County Probate Court had exclusive jurisdiction over Wyatt's personal injury claim, we are aware of no authority that vests that court with exclusive, indeed any, jurisdiction over his parents' separate claims or the subrogated claim of the insurance company. These are separate matters that do not come within the typical purview of a guardianship.
Blaney responds by citing In re Guardianship of Jadwisiak (1992),64 Ohio St.3d 176, 593 N.E.2d 1379, at paragraph one of the syllabus, in which the Ohio Supreme Court held that "[a] probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney fees to be drawn therefrom." We find nothing in that case, however, that controls the outcome in the instant case. The only claim at issue inJadwisiak was that of the minor ward, and the only issue was whether the probate court had jurisdiction to determine fees paid to the attorney who obtained a settlement for that claim. Obviously, the payment of such fees impinged on the very heart of the guardianship (i.e. the settlement funds obtained on the ward's claim and held for the benefit of the ward) and the probate court had subject matter jurisdiction over that issue. Indeed, as the Court noted, "[a]t the core of this case is the requirement that a probate court maintain control over any personal injury settlement entered into on behalf of the ward under the probate court's protection." (Emphasis added.) Id. at 181.
In short, Jadwisiak involved only the personal injury claim of the ward. The Ohio Supreme Court did not discuss the separate and distinct derivative claim of the parent or, as in this case, the subrogated claim of the parents' insurance company. We find nothing in either R.C. Chapter 2111 or in the Supreme Court's Jadwisiak holding that vests a probate court with jurisdiction over a parent's derivative claim for reimbursement of medical expenses. Therefore, in the instant case we find no impediment to the trial court assuming subject matter jurisdiction over this issue. Indeed, as appellee points out in its brief, at least one other Ohio appellate court has held that common pleas courts can decided subrogated claims and that such claims are not within the exclusive jurisdiction of probate courts. See e.g. Garrett v. Sandusky
(May 23, 1997), 6th Dist. No. E-96-047.[9]
Blaney also argues that the trial court erred in not finding that appellee's claims were fully adjudicated in probate court and, because appellee did not appeal that adjudication, appellee was thus barred from asserting them below by the doctrine of res judicata. Again, we are not persuaded.
The doctrine of res judicata provides that a final judgment between parties to litigation is conclusive as to all claims or issues therein litigated. Whitehead, supra, at paragraph one of the syllabus; Grava v.Parkman Twp., 73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 266, at the syllabus; National Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60,62, 558 N.E.2d 1178. Assuming arguendo in the case sub judice that the probate court had jurisdiction over the derivative claims of Wyatt's parents, and thus the subrogated claims of appellee[10], we agree with the trial court that no final judgment was issued in that case so as to invoke the doctrine of res judicata.
Although the Ross County Probate Court initially ordered no funds be paid to appellee for its subrogated interest, the court did order that net settlement proceeds be "deposited in the name of the minor "not be released until the minor attains the age of majority or upon further order of this Court . . ." On February 23, 2001, the probate court issued a second entry that states, inter alia, as follows:
"It is further the agreement of counsel for the parties that the net amount of the settlement, $49,357.12, [$300,000.00 less the cost of the structured settlement ($150,000.00) less suit expenses and attorney fees ($100,642.28)] shall be deposited by the Guardian for the benefit of the minor child in an approved insured depository and impounded by this Courtuntil such time as the issues of reimbursement to United Healthcare ofOhio have been fully and finally terminated as set forth in . . . theCourt of Common Pleas, Ross County, Ohio.
"It is further agreed by the parties that the net amount of said proceeds ($49,357.72) shall then be subject to expenditure only upontermination of the aforesaid litigation (United Healthcare of Ohio v.Alan J. Percival, supra)." (Emphasis added.)
It is apparent from the entry's language that the probate court envisioned further proceedings on the issue of appellee's subrogated interest. Thus, the probate court's judgment cannot be deemed a final determination of appellee's claim and the doctrine of res judicata would not apply.
For these reasons, Blaney's assignment of error is not well taken and is hereby overruled.
 II
We now turn to Percival's and Corcoran's assignment of error which, unfortunately, is somewhat difficult to understand. However, the gist of their position seems to be that the trial court erred in holding them liable to appellee. They appear to argue that they should be shielded from liability in this case because of the previous settlement with Blaney and that, because of such settlement, any judgment for appellee should have been entered against Blaney. We disagree.[11]
First, general principles of insurance law hold that any settlement between an injured party and a tortfeasor does not destroy a subrogation claim of the injured party's insurer if, prior to release, the tortfeasor has knowledge of such claim. See 16 Couch on Insurance (3d Ed. 2000) 224-138, § 224:113. That principal has been adopted by several Ohio courts. See e.g. Hines v. State Farm Ins. Co. (2001), 146 Ohio App.3d 128,133, 765 N.E.2d 414; Hartford Accident Co. v. Elliot (1972),32 Ohio App.2d 281, 282-283, 290 N.E.2d 919; Economy Fire Casualty Co.v. Motorist Mutual Ins. Co. (Nov. 27, 1995), 5th Dist. Nos. 1995CA00101 
1995CA00108. With that in mind, we turn to the joint stipulations of evidence submitted by the parties below which include the following:
"7. At all relevant times herein, Plaintiff, United Healthcare of Ohio, had placed Defendants herein, as well as the liability insurance carrier for Defendants, Alan J. Percival and J.L. Corcoran Sons, Nationwide Mutual Fire Insurance Company, on notice that it claimed a right of subrogation and/or reimbursement in the amount of $35,521.79."
Thus, by their own stipulations, Percival and Corcoran were put on notice of appellee's subrogated claim. They settled with Blaney at their own risk and cannot now rely on that settlement as a means by which to escape liability on the subrogated claim.
Their argument to the contrary has no merit.
Equally meritless is their assertion that Blaney should be the party responsible for any judgment recovered by appellee. Although Blaney did intervene as a party in this case, appellee did not amend its complaint to assert any claim against her. Furthermore, it is not clear what claim it could have asserted against her. Appellee's sole claim in this case was its subrogated interest and that was against the tortfeasors. In any event, without any claim pending against Blaney the court could not have entered judgment against her.
For these reasons, Percival's and Corcoran's assignment of error is without merit and is overruled.
Having reviewed all errors assigned and argued in the briefs, and finding merit in none of them, the judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
Abele, P.J. Kline, J.: Concur in Judgment Opinion.
Harsha, J.: Concurs in Judgment Only with Opinion.
[2] The record is unclear as to whether Percival was employed by Corcoran, and working in the scope of his employment at the time of the accident, or was simply a "permissive user" of the vehicle owned by Corcoran. In either event, Corcoran's insurance carrier assumed responsibility for the accident.
[3] This sum consisted of an initial cash payment of $150,000 together with future structured payments in excess of $500,000 with a present value of $150,000.
[4] The court did not explain why it did not order appellee compensated to the extent of its subrogated interest.
[5] The remaining balance of the initial settlement payment, or $49,357.72, was deposited in Citizens National Bank in the name of Wyatt Park.
[6] In the meantime, on February 23, 2000, the Probate Court filed an entry ordering that the settlement proceeds held for Wyatt be "impounded" until such time as the litigation in common pleas court was concluded.
[7] The judgment also included an express finding of "no just cause for delay." However, because that judgment resolved all pending claims in this case, such determination was unnecessary.
[8] "Subrogation," in its broadest sense, is the substitution of one party in the place of another with reference to a lawful claim or right.Federal Union Life Ins. Co. v. Deitsch (1939), 127 Ohio St. 505, 510,189 N.E. 440. Conventional subrogation, which is at issue in this case, is based on contract. See generally 18 Ohio Jurisprudence2d (2001) 245, Contribution, Indemnity and Subrogation, § 3.
[9] We acknowledge the existence of a line of case law holding that subrogation claims by insurance companies, as a result of concealment of guardianship assets, are deemed to be within the jurisdiction of probate court. See e.g. Rinehart v. Bank One, Columbus, N.A. (1998),125 Ohio App.3d 719, 728, 709 N.E.2d 559; Ohio Farmer's Insurance Co. v.Huntington National Bank (Sep. 28, 2000), 8th Dist. No. 76303; OhioFarmer's Insurance Co. v. Bank One, Dayton (Aug. 21, 1998), 2nd Dist. No. 16981. However, those cases are distinguishable from the case sub judice because (1) they involve funds held for the benefit of the ward (whereas this case involves a separate subrogation interest) and (2) those claims were brought under R.C. 2109.50 (whereas the claims in this case are based on common law contract and tort principles).
[10] Probate courts are courts of limited jurisdiction and probate proceedings are restricted to those actions permitted by law. State exrel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.,74 Ohio St.3d 19, 22, 1995-Ohio-96, 655 N.E.2d 1303; Corron v. Corron
(1988), 40 Ohio St.3d 75, 531 N.E.2d 708, at paragraph one of the syllabus; Schucker v. Metcalf (1986), 22 Ohio St.3d 33, 34, 488 N.E.2d 210. As noted earlier, we find no authority that grants probate court jurisdiction over separate derivative claims of a parent in these sorts of cases. Furthermore, it is not entirely clear whether the probate court actually intended to exercise jurisdiction in this case over appellee's subrogated claim. The trial court gave no explanation as to why it denied distribution of funds to appellee and it is conceivable that the court did so on the belief that this was a separate claim to be pursued in common pleas court.
[11] Percival and Corcoran cite no legal authority in support of either argument in their brief. We note that a failure to cite case law or statute in support of an argument as required by App.R. 16(A)(7) is grounds to disregard an assignment of error pursuant to App.R. 12(A)(2). See Meerhoff v. Huntington Mtge. Co. (1995), 103 Ohio App.3d 164, 169,658 N.E.2d 1109; State v. Riley (Dec. 29, 1998), 4th Dist. No. 98CA518;Hiles v. Veach (Nov. 20, 1998), 4th Dist. No. 97CA604. However, in the interests of justice, we will consider this assignment of error.