XENIA CITY BOARD OF EDUCATION, APPELLANT, *v.* XENIA
EDUCATION ASSOCIATION, APPELLEE.

(No. 921—Decided May 9, 1977.)

*Means, Bichimer, Burkholder & Baker Co., L. P. A.,*
for appellant.

*Snyder, Hochman, Rakay & Schmidt Co., L. P. A.,* for
appellee.

SHERER, P. J. This appeal is from a judgment of the
Court of Common Pleas of Greene County hold-
ing valid and enforceable a written contract between
the Xenia Board of Education and its teachers, represent-
ed by the Xenia Education Association, which provides
that when an impasse is reached in negotiations for a new
yearly employment contract the issues *must* be submitted to
arbitration.

The agreement was effective on March 15, 1971, and

Article III, Section 3.15, provides that it is to continue in effect from July 1 through June 30 of each year, unless changed or terminated in the manner provided therein (by the mutual consent of the parties).

Article III, Section 3.12, Settlement of Impasse, provides:

"If the Association and the Board agree that an impasse has been reached concerning proposals under negotiation, the proposals under such impasse may be referred to arbitration. If the Board and the Association cannot agree as to the arbitrator, he shall be selected by the American Arbitration Association in accordance with its rules which rules shall likewise govern the arbitration proceedings. The arbitrator shall strictly limit his decision to those sections of proposals under impasse.

"The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on all parties unless the same is contrary to law.

"The cost for the arbitrator, including his per diem expense, if any, and actual and necessary travel and subsistence expenses, shall be borne equally by the Association and the Board."

It is stipulated that in the negotiations for a new yearly employment contract an impasse was reached with respect to two issues, teachers' salaries and the continuation of the arbitration phase of the agreement. The phrase "may be referred to arbitration" is ambiguous but both parties and the Court of Common Pleas have considered arbitration to be compulsory.

The board refused to submit either of these issues to arbitration and filed a complaint in the Court of Common Pleas seeking a declaration of the rights of the parties as to Article III, Section 3.12, of the Agreement.

The board argues that enforcement of the binding arbitration clause of the agreement unlawfully vests in third parties the sole and exclusive duties and responsibilities imposed upon the board of education by statute.

The trial court, finding no statutory prohibition against a clause providing for binding arbitration to set

the terms of a collective bargaining agreement, declared such a clause to be valid and that the parties must abide by the terms of their own agreement voluntarily made.

Subsequently, the parties resolved the salary impasse and the arbitrator was never appointed. However, the enforceability of the binding arbitration clause presently contained in the agreement is still an issue in this case. That issue is not moot.

The teachers' association, arguing that the compulsory arbitration provision in Article III, Section 3.12, is valid, cites *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, which holds:

"1. A board of education is vested with discretionary authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law.

"2. A binding grievance arbitration clause contained in such agreement must be honored by the board of education where (1) the grievance involves the application or interpretation of a valid term of the agreement and (2) the arbitrator is specifically prohibited from making any decision which is inconsistent with the terms of the agreement or contrary to law." (Syllabus.)

That case involved "grievances" arising under a final negotiated contract entered into by the Dayton Board of Education with a teachers' association. A master agreement, or policy agreement, provided for compulsory arbitration of grievances. The "grievances" concerned allegedly inadequate parking facilities, allegedly unsuitable working conditions, the board's alleged failure to comply with the agreement's job posting provisions, and the board's alleged failure to place a substitute teacher on regular salary.

The case before us does not relate to an impasse as to the application or interpretation of a valid term of an existing employment contract with respect to "grievances" arising from such executed contract. Rather, the impasse

arose out of an attempt to negotiate a new employment agreement. We have noted that under Article III, Section 3.12, of the agreement, if the association and the board reach an impasse *concerning proposals under negotiation,* such proposals must be referred to arbitration. We have noted also that the proposals being negotiated here were proposals as to the salary to be paid to teachers and a proposal of the board to remove the compulsory arbitration clause from the negotiations procedure set forth in the master or policy agreement.

It is one thing to arbitrate grievances which arise as to rights of the parties under an existing employment contract. It is quite a different thing for a policy agreement to provide that if the parties to an agreement cannot agree upon terms of a new employment contract then an arbitrator must draw up a new contract.

We have noted that the Supreme Court in the *Dayton* case held that a board of education is vested with discretionary authority to enter into a collective bargaining agreement with its employees so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law.

The Court noted that R. C. 3313.47 grants to a board of education control of all public schools within its district; that R. C. 3313.17 provides that the board of education of each school district is capable of contracting and being contracted with; that R. C. 3319.08 requires boards of education to enter into written contracts with its teachers for their employment and that boards of education are required by R. C. 3313.20 to make such rules and regulations as are necessary for its government and the government of its employees.

The Court then stated that a board of education has been granted broad discretionary powers in its dual role of the manager of schools and the employer of teachers.

As Article III, Section 3.12, of the board's agreement with the Teachers Association, is construed by the Association and by the Court, the agreement conflicts with and abro-

gates the board's duties and responsibilities to enter into new collective bargaining agreements for the employment of teachers and other school personnel and to manage the schools in the public interest by providing that each new employment contract could eventually be written by arbitrators in perpetuity upon an impasse being reached in negotiations for each new employment contract. So construed, such agreement is contrary to the public policy pronounced by the legislature and is void.

The judgment of the Court of Common Pleas holding that the agreement is valid and enforceable in its provision for compulsory arbitration of the terms of each new yearly collective bargaining agreement between the teachers and the board is contrary to law and that portion of the judgment is reversed.

This Court will render the judgment the Court of Common Pleas should have rendered. We declare and hold that Article III, Section 3.12, is invalid and unenforceable in its provision for compulsory arbitration of the terms of each new employment agreement between the association and the board.

The Court's judgment holding that Article III, Section 3.12, is valid and enforceable where an impasse occurs between the board and the association in the settlement of *grievances* involving the application or intepretation of a valid term of an executed and existing employment agreement will be affirmed.

*Judgment reversed in part and affirmed in part.*

KERNS and McBRIDE, JJ., concur.

McBRIDE, J., concurring: I agree that *Dayton Teachers Assn.* v. *Dayton Bd. of Ed.* (1975), 41 Ohio St. 2d 127, does not apply to compulsory arbitration of new contracts. There is a world of difference between the "discretionary authority to negotiate and to enter into a collective bargaining agreement with employees" and an *executed* agreement with employees containing compulsory arbitration of

the terms and conditions of a valid contract. The distinction is clearly recognized in the two separate statements of law in the *Dayton* case.

However, the purpose of this concurring opinion is to point out that the Xenia Board of Education, in Article III, Section 3.12, reserved its discretionary power to negotiate and enter into contracts when it provided in the recognition and policy agreement that an impasse in negotiations *"may* be referred to arbitration." Courts have strained at times to construe the legislative use of *may* to mean *shall*, if the context otherwise requires such construction; however, it is another matter to amend the plain language of contracts by the parties. This is particularly true when such amendment would involve the loss by a public authority of a discretion vested by law in such authority. The provision in Article III, Section 3.12, for possible arbitration cannot be construed as compulsory unless voluntarily engaged in and accepted by the board. While this reservation of the discretionary power vested in the board is not as clear nor as explicit as that appearing in *Trotwood Teachers Assn.* v. *Board* (1977), 51 Ohio App. 2d 39, it has the same force and effect of protecting the authority of the board under the law.

I agree with the conclusion that a board of education may not abandon its discretionary power to negotiate and enter into new contracts. Such abandonment would be contrary to law and is not saved by an inconsistent exception that an agreement is imposed upon it "unless contrary to law." The exception for unlawful delegation, recognized in the *Dayton* case, as to executed contracts is too restrictive when transferred and applied to the broad and general discretionary power of a public authority *to enter into contracts* involving the public interest and trust. The public trust may not be assigned to strangers.

However, I would not reach that issue in construing the instant policy agreement because, here, arbitration on new contracts is not compulsory, was refused by the board under its option and was imposed upon the board only by the court order, which, to the extent indicated, must be reversed.