ART, Grdn., et al., Appellees,

v.

ERWIN et al., Appellees; Butler Wick & Co., Inc., Appellant.

[Cite as Art v. Erwin, 183 Ohio App. 3d 651, 2009-Ohio-4306.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–835.

Decided Aug. 25, 2009.

---

652

McNamara & McNamara, L.L.P., William H. Woods, and Jonathan M. Bryan, for appellee Ohio Casualty Insurance Company.

Coolidge Wall Co., L.P.A., Richard A. Talda, and Maureen S. Hinson, for appellant Butler Wick & Co., Inc.

SADLER, Judge.

{¶ 1} Defendant-appellant, Butler Wick & Co., Inc. ("Butler"), appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division ("probate court"), in a statutory concealment action against Butler, in which the probate court denied Butler's motion to stay the concealment proceedings pending arbitration.

{¶ 2} We begin by reviewing the salient facts and procedural history in this case. On November 5, 1993, Katherine A. Guzay established a brokerage account with Butler. In connection with the establishment of this account, Guzay and Butler entered into a "Customer's Margin Agreement." By way of background, "margin trading" means the "[t]rading of stocks whereby the customer trades partly on collateral and partly on money borrowed from the broker-dealer." Beyer & Redden, Modern Dictionary for the Legal Profession (3d Ed.2001). "Margin" is defined as "[c]ash or collateral required to be paid to a securities broker by an investor to protect the broker against losses from securities bought on credit." Black's Law Dictionary (8th Ed.2004).

{¶ 3} The agreement that Guzay signed with Butler, in which the term "you" refers to Butler and the terms "undersigned," "me," and "my" refer to Guzay, provided, inter alia:

16. This agreement and its enforcement shall be governed by the laws of the State of Ohio and its provisions shall be continuous; shall cover individually and collectively all accounts which the undersigned may open or re-open with you, and * * * shall be binding upon the undersigned, and/or the estate, executors, administrators and assigns of the undersigned.

* * *

19. ARBITRATION The undersigned agrees, and by carrying on account for the undersigned you agree that all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined, to the extent consistent with federal and state law, by arbitration, pursuant to the arbitration laws of the State of Ohio, before the American Arbitration Association and in accordance with its rules then obtaining, or before the undersigned may elect in the first instance whether arbitration shall be by the American Arbitration Association or by the New York Stock Exchange, Inc. or arbitration facility provided by any other exchange or the National Association of Securities Dealers, Inc. and in accordance with its rules then obtaining, but if the undersigned fails to make such election, by registered letter or telegram address[ed] to you at your main office, before the expiration of five days after receipt of written request

from you to make such election, then you may make such election. The terms of arbitrations includes:

a. The award of arbitration is final and binding on the parties.

b. The parties are waiving their right to seek remedies in court, including the right to jury trial.

{¶ 4} At the end of November 1997, Butler held cash and securities owned by Guzay that had a value in excess of $180,000. On December 12, 1997, the probate court issued a judgment finding Guzay to be incompetent and appointing her daughter, Davis Erwin, as guardian of Guzay's person and estate. Plaintiff-appellee, Ohio Casualty Insurance Company ("OCIC"), issued a bond that was filed with the probate court and conditioned upon Davis Erwin's faithful and honest discharge of her duties as fiduciary pursuant to R.C. 2109.04.

{¶ 5} At the time, Davis's husband, Joseph Erwin, was a stockbroker with Eisner Securities. He established an account with Eisner Securities for Guzay's assets. On December 15, 1997, three days after the institution of the guardianship, Butler received an electronic request from third-party defendant, National Financial Services, L.L.C. ("NFS"), through a national investment-account clearinghouse service, to transfer Guzay's account assets to the Eisner Securities account.

{¶ 6} It has been alleged that following deposit of Guzay's assets into the Eisner Securities account, Joseph Davis transferred the assets to a National City Bank account in Davis Erwin's name, and the Erwins misappropriated the funds. Davis Erwin was eventually removed as Guzay's guardian, and Andrew J. Art was appointed the successor guardian. On August 21, 2001, Art initiated these proceedings by filing a complaint with the probate court alleging a concealment of the ward's assets pursuant to R.C. 2109.50 et seq. The complaint, as amended, alleged concealment on the part of Butler, the Erwins, Eisner Securities, National City Bank, Bank One, and PNC National Bank, and also named OCIC as a defendant. The probate court later substituted OCIC for Art as the plaintiff in the caption of the concealment proceedings because OCIC, as surety, faces liability on its bond in the event the guardianship estate is unable to recover the misappropriated funds. Subsequently, all defendants were dismissed, with the exception of Butler. Butler filed a third-party complaint against NFS seeking indemnification.

{¶ 7} On August 5, 2005, Butler filed a motion to stay the concealment proceedings pending arbitration pursuant to R.C. 2711.03(A). OCIC opposed the motion. After a long delay, a magistrate of the probate court held a hearing on the motion on February 26, 2008. On June 12, 2008, the magistrate issued a four-page decision recommending that the probate court deny Butler's motion to stay pending arbitration. The magistrate's findings of fact consisted in the

parties' stipulated facts, a copy of which was appended to the magistrate's decision. The balance of the decision contained conclusions of law. The magistrate concluded that the arbitration clause in the Customer's Margin Agreement pertained only to disputes involving margin trading and that since there was no evidence that Guzay had ever engaged in any margin trading, and because the facts underlying the concealment proceedings did not involve margin trading, the arbitration clause would not apply to stay the concealment proceedings.

{¶ 8} Butler filed objections that OCIC opposed. In a judgment entry journalized on August 26, 2008, the probate court overruled the objections and adopted the magistrate's decision. The probate court did not address the question whether the arbitration clause applied only to disputes involving margin trading. Rather, the court determined that the arbitration clause was unenforceable because a concealment action was not within the scope of issues to which the signatories intended the clause to apply. The court rejected Butler's argument that this concealment action is, in reality, a common-law negligence claim; it determined that Butler had been on notice from the inception of the proceedings that the matter was a statutory concealment proceeding. The court went on to conclude that parties cannot use an arbitration agreement to divest the probate court of its statutorily granted power to adjudicate concealment actions involving assets belonging to a guardianship estate.

{¶ 9} Butler timely appealed and advances four assignments of error for our review, as follows:

First Assignment of Error

The trial/probate court committed error by failing to find that the claims made against appellant Butler Wick require resolution exclusively by private arbitration.

Second Assignment of Error

The trial/probate court committed error by not finding that the claims made against appellant Butler Wick are not within the parties' written customer account agreement and their contemplation of claims to be resolved by arbitration.

Third Assignment of Error

The trial/probate court committed error by finding that the claims made against appellant Butler Wick are legally and sufficiently asserted and pled pursuant to Ohio Rev.Code § 2109.50–56 and Ohio Civ. R. 8.

Fourth Assignment of Error

The trial/probate court committed error by finding that Ohio Rev.Code § 2109.50–56 vest Ohio probate courts with exclusive jurisdiction to resolve asset concealment claims, and that this jurisdiction of Ohio probate courts is

not waivable by the agreement of parties to otherwise privately arbitrate asset concealment claims and controversies.

{¶ 10} We will address Butler's assignments of error out of order for ease of discussion.

{¶ 11} We begin with Butler's third assignment of error. The probate court denied Butler's motion to stay pending arbitration because it determined that the arbitration agreement could not divest the court of its exclusive jurisdiction to hear and determine concealment actions pursuant to R.C. 2109.50. In its third assignment of error, Butler argues that the within action is not a concealment action. This fact, Butler argues, renders the probate court's analysis fundamentally flawed from the outset.

{¶ 12} According to Butler, the complaint does not include all of the elements of a claim for asset concealment under R.C. 2109.50 and states only a *common-law negligence action*. Therefore, Butler maintains, in ruling on its motion to stay pending arbitration, the trial court should have treated the matter as a negligence claim not exclusively within its jurisdiction, and, thus, fully referable to arbitration. In the alternative, Butler argues that the complaint states a claim for *breach of contract*, which is also amenable to arbitration, and for which the concealment statute is not to be used as a substitute, in order "to collect a debt, obtain an accounting or adjudicate rights under a contract." *In re Estate of Woods* (1959), 110 Ohio App. 277, 285, 11 O.O.2d 302, 167 N.E.2d 122.

{¶ 13} Thus, Butler's third assignment of error requires us to determine the nature of the claim set forth in the complaint and whether the probate court correctly analyzed it as a concealment claim. R.C. 2109.50 provides:

> Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.
>
> The probate court may initiate proceedings on its own motion.
>
> The probate court shall forthwith proceed to hear and determine the matter.
>
> The examinations, including questions and answers, shall be reduced to writing, signed by the party examined, and filed in the probate court.

If required by either party, the probate court shall swear such witnesses as may be offered by either party touching the matter of such complaint and cause the examination of every such witness, including questions and answers, to be reduced to writing, signed by the witness, and filed in the probate court.

{¶ 14} R.C. 2109.52 provides:

When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine, by the verdict of a jury if either party requires it or without if not required, whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys, chattels, or choses in action of the trust estate. If such person is found guilty, the probate court shall assess the amount of damages to be recovered or the court may order the return of the specific thing concealed or embezzled or may order restoration in kind. The probate court may issue a citation into any county in this state, which citation shall be served and returned as provided in section 2109.50, requiring any person to appear before it who claims any interest in the assets alleged to have been concealed, embezzled, conveyed, or held in possession and at such hearing may hear and determine questions of title relating to such assets. In all cases, except when the person found guilty is the fiduciary, the probate court shall forthwith render judgment in favor of the fiduciary or if there is no fiduciary in this state, the probate court shall render judgment in favor of the state, against the person found guilty, for the amount of the moneys or the value of the chattels or choses in action concealed, embezzled, conveyed away, or held in possession, together with ten per cent penalty and all costs of such proceedings or complaint; except that such judgment shall be reduced to the extent of the value of any thing specifically restored or returned in kind as provided in this section.

{¶ 15} In an often-cited case setting forth the elements of a concealment claim, the court in *In re Estate of Popp* (1994), 94 Ohio App.3d 640, 647, 641 N.E.2d 739, held that "in a proceeding against a financial institution under R.C. 2109.50 for wrongful conveyance, it must first be established that there was a conveyance, made to a wrong party, after which all that is required is to show by a preponderance of evidence that the money belonged to the decedent." It follows, then, that "[a] financial institution which conveys out money in its possession to an unauthorized individual * * * comes within the provisions of R.C. 2109.50 et seq." *Rinehart v. Bank One* (1998), 125 Ohio App.3d 719, 728, 709 N.E.2d 559; see also *Ohio Farmers Ins. Co. v. Bank One* (Aug. 21, 1998), 2d Dist. No. 16981, 1998 WL 892255. Therefore, in order to state a prima facie claim for concealment under R.C. 2109.50, Art (later replaced by OCIC) was required to allege that (1) Butler made a conveyance (2) of assets belonging to

Guzay's guardianship estate (3) to a party unauthorized to take possession of the assets.

{¶ 16} In the pleading entitled "Second Amended Complaint on Concealment of Assets," Art (later replaced by OCIC) made the following allegations against Butler in Count 6:

23. Plaintiff states that Defendant Butler–Wick is liable to the Ward for negligently allowing the assets of the Ward to be converted.

24. Plaintiff further states that Defendant Butler–Wick improperly allowed the Ward's assets to be transferred and/or paid out of the Ward's accounts with Defendant Butler–Wick without the proper or necessary authorization from the Court.

{¶ 17} The second amended complaint also contains an allegation that OCIC is liable to Guzay's guardianship estate for any and all losses suffered during Davis Erwin's tenure as guardian because OCIC is the surety that issued the bond for Davis Erwin's services. Finally, in the second amended complaint, Art (later, OCIC) prayed for, among others, the following types of relief:

A. That citations be issued to Defendants * * * Butler–Wick & Co., Inc. requiring each to appear before this Court bringing with them all records pertaining in any way to monies, accounts, or any other property received, converted, or paid out from the accounts of Katherine A. Guzay. To the extent that such monies, accounts or other property has been liquidated or converted into another form, Defendants be ordered to appear and deliver to the Court all records pertaining thereto;

B. That Defendants be examined under oath regarding the issues presented by this Complaint and that each be required to answer;

C. That this Court find that Defendants wrongfully obtained, transferred, and/or converted assets from the Ward.

{¶ 18} An action filed pursuant to R.C. Chapter 2950 is governed by the Civil Rules applicable in probate court. *Randle v. Randle,* 8th Dist. No. 88120, 2007-Ohio-1156, 2007 WL 766104, ¶ 8. Civ.R. 8(A)(1) requires a complaint to include only a "short and plain statement of the claim showing that the party is entitled to relief." Because "Ohio is a notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29.

{¶ 19} In our view, the second amended complaint in this case states a claim against Butler for concealment pursuant to R.C. Chapter 2950. It contains allegations that Butler improperly transferred the ward's assets to someone without authority to receive the assets. Where a surety alleges that a financial

institution conveyed away a ward's assets to another person, without proper authorization to do so, the action "falls squarely within the ambit of R.C. 2109.50 and the exclusive jurisdiction of the Probate Division." *Ohio Farmers Ins. Co. v. Huntington Natl. Bank* (Sept. 28, 2000), 8th Dist. No. 76303, 2000 WL 1434036. Accordingly, we reject Butler's argument that the probate court erred in treating the claim as one for statutory concealment when it passed upon Butler's motion to stay pending arbitration. For this reason, Butler's third assignment of error is overruled.

{¶ 20} In its first and fourth assignments of error, which we will address together, Butler argues that the Customer's Margin Agreement states that the exclusive means for resolving the concealment action is private arbitration. It contends that the probate court erred in rejecting that argument and instead concluding that the arbitration agreement cannot divest the probate court of its exclusive jurisdiction to adjudicate concealment actions. The parties agree that the issue whether the Ohio Arbitration Act applies to concealment actions under R.C. Chapter 2950 is an issue of first impression in Ohio.

{¶ 21} The law pertaining to the enforcement of arbitration provisions is set forth in R.C. Chapter 2711. "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * or any agreement in writing between two or more persons to submit to arbitration any controversy * * * arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A).

{¶ 22} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration." R.C. 2711.02(B). "The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement." R.C. 2711.03(A).

{¶ 23} "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other

provision in a contract should be respected." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859

{¶ 24} In *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, the Supreme Court of Ohio adopted four rules for reviewing decisions concerning a dispute's "arbitrability": (1) that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," (2) that the question whether a particular claim is arbitrable is one of law for the court to decide, (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim, and (4) that when a "contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. at 665–666, 687 N.E.2d 1352, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648–650, 106 S.Ct. 1415, 89 L.Ed.2d 648.

{¶ 25} Appellate courts generally review a trial court's decision regarding a motion to stay proceedings pending arbitration under an abuse of discretion standard. However, the de novo standard of review is proper when the appeal presents a question of law. *Davis v. Beggs*, 10th Dist. No. 08AP–432, 2008-Ohio-6311, 2008 WL 5104808, ¶ 7.

{¶ 26} Butler argues that the concealment action clearly falls within the arbitration clause and, therefore, must be resolved through arbitration because it arises out of or is related to the Customer's Margin Agreement, which covers all funds that Butler held for Guzay. It further argues that even though jurisdiction of asset-concealment claims is statutorily vested solely in the probate courts (as opposed to other courts), such claims are nonetheless subject to arbitration, especially in light of the general public policy favoring arbitration as a means of settling disputes.

{¶ 27} Butler maintains that parties to an arbitration agreement may waive statutory rights—including their right to seek relief from the probate court under R.C. Chapter 2950—so long as such a waiver does not violate public policy. In support of this contention, Butler cites numerous cases in which federal courts have held that parties may waive, through arbitration agreements, their right to court adjudication of other rights conferred on them by statute (e.g., Truth in Lending Act, Equal Credit Opportunity Act, Age Discrimination and Employment Act, Racketeer Influenced and Corrupt Organizations Act).

{¶ 28} It also cites the case of *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 20, in which the court stated that statutory claims "are neither per se arbitrable or not arbitrable." It also cites several decisions from Ohio courts of appeals, in which those courts concluded that statutory claims may be arbitrated so long as the complaining party is able to vindicate its statutory cause of action through arbitration. On this basis, Butler argues that the probate court should have analyzed whether arbitration here would have impaired the aims of the conceal-ment statutes. On that point, Butler maintains that the Customer's Margin Agreement calls for an arbitration process that would not limit OCIC's statutory remedies in any way.

{¶ 29} In response, OCIC argues that to refer the concealment action to arbitration would undermine the sound public policy that underpins R.C. Chapter 2950. OCIC maintains that the probate court must act on a complaint alleging concealment of estate assets because the offense alleged is an offense against the probate court's jurisdiction and duty, as the superior guardian of all wards, to safeguard those incompetent citizens' assets. OCIC urges that such matters are not private disputes arising out of contractual or business relationships, but quasi-criminal matters that must be dealt with summarily by the probate court because the court is the only entity with ultimate control over a ward's estate.

{¶ 30} OCIC further argues that the primary reason cited for favoring arbitra-tion over litigation—that arbitration is quicker and more cost-efficient—would not be furthered by referring this matter to arbitration. This is because, OCIC argues, the statutory process is itself designed to be a quick and efficient means of identifying and securing estate assets. OCIC analogizes this situation to cases in which this court has refused to allow an arbitration agreement to divest the Ohio Department of Insurance Office of the Insurance Liquidator of its consider-able statutory powers over the assets of insolvent insurance companies. E.g., *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50; *Hudson v. John Hancock Financial Servs.*, 10th Dist. No. 06AP–1284, 2007-Ohio-6997, 2007 WL 4532704.

{¶ 31} Butler acknowledges the insurance-liquidation cases, and also cites two other cases in which courts have refused to refer statutory claims to arbitration, but Butler characterizes all of these cases as "exceptions" that "are very limited, and do not apply here." The two additional cases are *Kelm v. Kelm* (2001), 92 Ohio St.3d 223, 749 N.E.2d 299, in which the Supreme Court of Ohio held that child custody and visitation are not subject to the parents' arbitration agreement because the state owes a duty, by virtue of its parens patriae relationship to children, to determine their best interests; and *Xenia City Bd. of Edn. v. Xenia Edn. Assn.* (1977), 52 Ohio App.2d 373, 377, 6 O.O.3d 425, 370 N.E.2d 756, in

which the appellate court refused to enforce an agreement to arbitrate the issue of which competing contract proposal to adopt in the event of a negotiation impasse, because this would abrogate the board of education's duties to negotiate its own contracts.

{¶ 32} Our task in resolving Butler's first and fourth assignments of error is to determine whether it is appropriate to refer statutory concealment actions to private arbitration or whether, as in *Kelm* and *Xenia* and in the insurance-liquidation cases, private arbitration would vitiate the probate court's powers and duties as the superior guardian of incompetent persons.[1] Critical to this analysis is an examination of the nature of concealment actions.

{¶ 33} In the case of *In re Estate of Black* (1945), 145 Ohio St. 405, 31 O.O. 31, 62 N.E.2d 90, a case involving proceedings under a section of the General Code that is analogous to R.C. 2109.50 et seq., the Supreme Court of Ohio held that the statutory scheme for concealment actions "provide[s] a summary means, inquisitorial in nature, to recover specific property or the proceeds or value thereof belonging to a trust estate, title to which was in a decedent at his death or in a ward when his guardian was appointed; or to recover property, belonging to a trust estate, concealed, taken or disposed of after the appointment of the fiduciary." Id. at paragraph one of the syllabus. Such a proceeding may not be used by individuals "to collect a debt, obtain an accounting or adjudicate rights under a contract." Id. at paragraph five of the syllabus.

{¶ 34} Instead, R.C. 2109.50 "creates a 'special proceeding' which is inquisitorial in nature and involves a charge of wrongful or criminal conduct on the part of the accused.' " *Sexton v. Jude* (Sept. 7, 1994), 2d Dist. No. 14227, 1994 WL 483514, quoting *In re Estate of Meyer* (1989), 63 Ohio App.3d 454, 457, 579 N.E.2d 260. In such a proceeding, "a finding of guilty or not guilty is required with the imposition of a penalty upon a finding of guilty." *Black*, supra, at paragraph three of the syllabus.

{¶ 35} The purpose of a concealment action "is not to furnish a substitute for a civil action to recover judgment for money owing to an estate, but rather to provide a speedy and effective method of discovering assets belonging to the estate and to secure possession of them for administration." Id. at 410–411, 31 O.O. 31, 62 N.E.2d 90, citing *Goodrich v. Anderson* (1940), 136 Ohio St. 509, 17 O.O. 152, 26 N.E.2d 1016; see also *Rinehart*, supra. In *In re Estate of Fife*

---

1. "In addition to the general grant of jurisdiction found in R.C. 2101.24, probate courts are granted authority over guardians in all respects. The probate courts serve as superior guardians, with the ultimate authority to approve and direct the actions of guardians subject to their jurisdiction," *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 17.

(1956), 164 Ohio St. 449, 453, 58 O.O. 293, 132 N.E.2d 185, the Supreme Court of Ohio held as follows with respect to concealment proceedings:

1. A proceeding for the discovery of concealed or embezzled assets of an estate * * * is a special proceeding of a summary and inquisitorial character and is quasi criminal in nature.

2. A purpose of such proceeding is to facilitate the administration of estates by summarily bringing into them those assets which rightfully belong there.

3. In such a proceeding it is the court which cites the person suspected of having concealed or embezzled assets to appear before it to be examined on oath touching the subject matter of the complaint, and it is the court which is in control of the examination, notwithstanding such examination may be delegated to and conducted by attorneys.

4. Such suspected person is in reality the witness of the court, and the character and extent of his examination rest largely in the court's discretion, and, where it is apparent from the record that such discretion has not been abused, there is no basis for reversal in this respect by a reviewing court.

5. Such suspected person is the court's witness, and neither the complainant nor any other person interested in the trust estate and opposed to the claims of the suspected person is bound by the suspected person's testimony.

Id. at syllabus.

{¶ 36} Having reviewed the language of R.C. 2109.50 and the decisional law concerning its purpose, nature, and operation, we reach the following conclusions. The statutory concealment action has existed since before the adoption of the Ohio Revised Code. Its nature bears little resemblance to a civil action, either in purpose or execution. It is not a matter of dispute between two private parties, such as (in this case) a broker and a surety. It is a summary, inquisitorial, quasi-criminal proceeding which, by the plain language of R.C. 2109.50, must be conducted not merely *in* the probate court, but by the probate court. In essence, the accused is one party and the court itself, as the superior guardian of the ward, is the other. The fact that an "interested party," such as a surety or a family member or heir of the ward, may bring a complaint to begin the inquisitorial process does not, in the long-held view of the Supreme Court of Ohio, transform it into a matter akin to a private dispute and a controversy thus amenable to resolution by private arbitration. The reasons primarily advanced in favor of private arbitration, which are increased efficiency and decreased cost, would not be advanced by referring concealment actions to arbitration. For all of these reasons, we hold that statutory concealment actions under R.C. Chapter 2109 may not be referred to private arbitration. Accordingly, Butler's first and fourth assignments of error are overruled.

{¶ 37} Finally, we address Butler's second assignment of error. The trial court adopted, and overruled Butler's objection to, the following conclusion of the magistrate: "A careful reading of the Margin Agreement indicates it is intended to protect Butler Wick in the event Ms. Guzay desired to invest in margin activity. There is no evidence to indicate Ms. Guzay ever invested in margin activity and the dispute at hand does not involve margin activity but rather deals with the access to her account by an outside broker." In its second assignment of error, Butler argues that the probate court erred in determining that the arbitration agreement between Butler and Guzay pertained only to margin trading and not to all transactions or transfers involving Guzay's assets. Because our resolution of Butler's first and fourth assignments of error renders it moot, Butler's second assignment of error is overruled.

{¶ 38} In summary, Butler's first, third, and fourth assignments of error are overruled on their merits, its second assignment of error is overruled as moot, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

BROWN and McGRATH, JJ., concur.