**ART, et al.; Ohio Casualty Insurance Company, Appellant,**

**v.**

**ERWIN et al.; Butler Wick & Company, Inc., Appellees.**

[Cite as *Art v. Erwin*, 194 Ohio App.3d 421, 2011-Ohio-2371.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–747.

Decided May 17, 2011.

McNamara & McNamara, L.L.P., William H. Woods, and Jonathan M. Bryan, for appellant.

Coolidge Wall Co., L.P.A., Richard A. Talda, and Sasha Alexa M. VanDeGrift, for appellee.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, the Ohio Casualty Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, which granted summary judgment in favor of defendant-appellee, Butler Wick & Company, Inc. For the following reasons, we reverse and remand this case for further proceedings.

{¶ 2} On October 11, 1997, Katherine A. Guzay suffered severe injuries, including traumatic brain injury, as a result of an automobile accident. Since Guzay's injuries left her with memory deficits and in need of 24–hour care, Guzay's daughter, Davis A. Erwin ("Davis"), applied to the probate court for appointment as guardian of her mother's person and estate. A magistrate conducted a hearing on Davis's application, at which Davis testified that her mother had a brokerage account valued at approximately $200,000. Following the hearing, the magistrate recommended that the probate court appoint Davis guardian of her mother's person and estate and set her guardian's bond at $400,000.

{¶ 3} On December 12, 1997, the probate court entered judgment adopting the magistrate's decision. In accordance with the judgment, Davis secured and filed with the probate court a $400,000 guardian's bond issued by Ohio Casualty.

{¶ 4} On the same day that the probate court entered judgment appointing Davis guardian for her mother, the probate court also issued Davis letters of guardianship. Pursuant to Sup.R. 51, the letters of guardianship consisted of a standard form that the probate judge completed and signed. The letters of guardianship included the following "Notice to Financial Institutions:"

Funds being held in the name of the within named ward shall not be released to the Guardian without a Court Order directing release of a specific fund and amounts thereof.

{¶ 5} At the time that Davis became Guzay's ward, she had a brokerage account with Butler Wick that held securities and cash valued in excess of $180,000. Davis referred to this account—her mother's single most valuable asset—in her testimony before the magistrate. On or about December 15, 1997, Butler Wick received an electronic request to transfer the securities and cash in Guzay's account to another brokerage, National Financial Services Corporation ("NFS"). Butler Wick received the request through the Automated Customer Account Transfer Service ("ACATS"), a computerized system that automates and standardizes procedures for the transfer of assets from a customer account with one brokerage or bank to an account with another brokerage or bank. To facilitate the transfer, the ACATS system generated an "Asset Detail Report as Deliverer" that Butler Wick printed out and retained. That report indicated that Butler Wick was to transfer the securities and cash in Guzay's account to NFS account number CHW–033839, held by "Katherine A. Guzay C/O Davis A. Erwin."

{¶ 6} NFS is a registered and licensed securities broker-dealer firm that provides clearing services for correspondent securities broker-dealers. As a clearing broker, NFS executes and clears sales and purchases of securities and carries brokerage accounts for correspondent securities broker-dealers. From

December 1997 to February 2001, NFS acted as a clearing broker for Eisner Securities ("Eisner"). Thus, NFS carried brokerage accounts for Eisner clients that Eisner opened and serviced.

{¶ 7} Joseph Erwin ("Joseph"), Guzay's son-in-law, was employed as a branch manager and registered representative of Eisner's Columbus branch from June 1997 to September 2000. In early December 1997, Eisner opened brokerage account number CHW–033839 in the name of "Davis A. Erwin, Guardian for Katherine A. Guzay" with NFS. Joseph served as the account executive for NFS account number CHW–033839.[1]

{¶ 8} On December 18, 1997, Butler Wick transferred all of the securities in Guzay's account to NFS account number CHW–033839. In January 1998, Butler Wick transferred all the cash in Guzay's account to NFS account number CHW–033839.

{¶ 9} Immediately after the transfers, Joseph began to systemically divert Guzay's funds into his Bank One bank account. From December 1997 to early March 1998, Joseph transferred a total of $92,969.41 from NFS account number CHW–033839 to a National City Bank checking account that Guzay had opened prior to the commencement of the guardianship. Joseph then forged Guzay's signature on checks and used the forged checks to deposit $90,338.33 of Guzay's funds into his own bank account. From mid-March 1998 to May 1999, Joseph forged his wife's signature on checks payable from the funds in NFS account number CHW–033839 and deposited those checks in his own bank account. By this more direct method of embezzlement, Joseph stole $95,500 of Guzay's money.

{¶ 10} Joseph concealed his theft from Davis by providing her and her attorney with fraudulent account statements. The accounts of administration that Davis filed with the probate court on March 17 and September 28, 1999, relied on Joseph's misrepresentations regarding the value of the NFS accounts. Unaware that the accounts reflected fraudulent information, the probate court issued judgments approving and settling those accounts.

{¶ 11} Davis filed her second (and final) account after resigning as guardian of Guzay's estate. The judgment that approved and settled Davis's final account also discharged Davis as guardian of the estate and Ohio Casualty as her bondsman. Davis continued to serve as guardian of her mother's person, while W. Sean Kelleher took over as guardian of Guzay's estate.

---

1. Eisner opened a second NFS account in the name of "Davis A. Erwin, Guardian for Katherine A. Guzay" sometime in or about February 1998. Joseph also served as the account executive for that account.

{¶ 12} Joseph did not only steal from Guzay. From May 1997 through September 2000, Joseph embezzled over $2.5 million from other Eisner clients.[2] In September 2000, Kelleher, then the guardian of Guzay's estate, discovered that Eisner had terminated Joseph's employment and that Eisner, in conjunction with the Federal Bureau of Investigations, was investigating Joseph's mishandling of Eisner clients' money. Kelleher became alarmed when Eisner repeatedly avoided his attempts to verify the existence of Guzay's assets. In addition to serving as Guzay's guardian, Kelleher was also Joseph's attorney. In light of the conflict of interest between Guzay and Joseph, Kelleher resigned as guardian of Guzay's estate. At the same time, Davis resigned as guardian of Guzay's person.

{¶ 13} The probate court appointed Andrew J. Art as the successor guardian of Guzay's estate and person. On February 14, 2001, Art filed exceptions to the two accounts that Davis had submitted during her tenure as guardian and the sole account that Kelleher had filed. In the exceptions, Art represented that only $1,233.39 remained in the NFS accounts. Art followed the exceptions with a motion seeking relief from the judgments in which the probate court approved and settled the two accounts that Davis had filed. The motion also asked the probate court to find Erwin and Ohio Casualty liable for the loss of the funds that Joseph had embezzled, as well as related damages, including unauthorized transactional fees and commissions that Eisner had collected from the estate.

{¶ 14} Art then filed a complaint in the probate court alleging concealment of Guzay's assets pursuant to R.C. 2109.50. Art asserted this action against multiple defendants, including Joseph, Davis, Eisner, Bank One, National City Bank, Ohio Casualty, and Butler Wick. Ohio Casualty, however, moved to be realigned as a plaintiff, arguing that it shared Art's interest in recovering estate assets. The probate court granted Ohio Casualty's motion.

{¶ 15} On June 18, 2002, the probate court sustained Art's exceptions to the accounts and granted his motion for relief from the two judgments approving and settling the accounts. The probate court found that because Davis had failed to exercise any diligence whatsoever as guardian of her mother's estate, she was liable for the losses sustained due to Joseph's theft. The probate court also found that it "was defrauded by the presentation of falsified bank or brokerage statements, [which] constitute[d] fraud sufficient to vacate the [two previous] orders under O.R.C. 2109.35." The probate court surcharged Davis $271,415.51, plus interest, for the losses incurred through her abdication of her duties as

---

2. As a result of this embezzlement, Joseph was indicted in the United States District Court for the Southern District of Ohio on one count of mail fraud and one count of wire fraud. He pleaded guilty to both counts and received a sentence of 60 months' imprisonment for mail fraud and a consecutive term of 60 months' imprisonment for wire fraud. See *United States v. Erwin* (C.A.6, 2003), 67 Fed.Appx. 876 (affirming the sentence).

guardian. Recognizing Guzay's financial distress, the probate court ordered Art to proceed expeditiously against Ohio Casualty to satisfy Davis's obligation.[3] Ohio Casualty appealed the probate court's judgment and lost. *In re Guardianship of Guzay*, 10th Dist. No. 02AP–745, 2003-Ohio-5036, 2003 WL 22177106.

{¶ 16} After its unsuccessful appeal, Ohio Casualty agreed to settle with Art. As part of the settlement, Art assigned to Ohio Casualty the claims and demands that he had asserted in the R.C. 2109.50 concealment action. In its order authorizing the settlement, the probate court allowed Ohio Casualty to pursue the R.C. 2109.50 concealment action in Art's place.

{¶ 17} Upon assuming control of the R.C. 2109.50 litigation, Ohio Casualty voluntarily dismissed all defendants except Joseph, Davis, National City Bank, and Butler Wick.[4] On August 5, 2005, Butler Wick moved to stay the proceedings pending arbitration. Butler Wick argued that the Customer's Margin Agreement that Guzay signed when she opened her brokerage account required arbitration of the R.C. 2109.50 concealment action. The probate court denied Butler Wick's motion. On appeal of that ruling, this court affirmed the probate court's judgment. *Art v. Erwin*, 183 Ohio App.3d 651, 2009-Ohio-4306, 918 N.E.2d 207.

{¶ 18} On remand to the probate court, both Ohio Casualty and Butler Wick filed motions for summary judgment. The probate court issued a decision granting Butler Wick's motion and denying Ohio Casualty's motion. Essentially, the probate court concluded that Butler Wick was not guilty of conveying away assets of the trust estate. The probate court reached this conclusion because Butler Wick transferred the securities and cash in Guzay's brokerage account to an account under Davis's control. The probate court assumed that as guardian, Davis was a "proper person" to take possession of estate assets. The probate court reduced its decision to judgment on August 5, 2010.[5] Ohio Casualty now appeals from that judgment and assigns the following errors:

■ The probate court erred as a matter of law in overruling Ohio Casualty's motion for summary judgment and granting Butler Wick's cross-motion by failing to apply the law of the case as stated in this court's opinion in *Art v. Erwin*. The probate court's holding that Butler Wick is not strictly liable for conveying away the assets in Guzay's brokerage account without obtaining an

---

3. By this time, Davis had moved to the Virgin Islands, and she did not return for any court proceedings involving her mother's estate. On May 30, 2001, Davis filed an affidavit with the probate court in which she claimed not to have any assets.

4. Ohio Casualty later voluntarily dismissed National City Bank as well.

5. Before entering this judgment, the probate court granted Ohio Casualty a default judgment against Joseph, ordering him to pay Ohio Casualty $194,619.24, plus interest. Ohio Casualty voluntarily dismissed its action against Davis.

order from the probate court, as superior guardian, is in direct conflict with the plain text of Ohio's standard letters of guardianship (form 15.4a) and the law of this case as stated in this court's prior opinion in *Art v. Erwin.*

▮ The probate court erred as a matter of law in holding that Davis Erwin, as guardian, NFS and/or Eisner were "properly authorized" to receive the transfer of Guzay's brokerage account from Butler Wick even though the probate court had not ordered Butler Wick to release custody and control of Guzay's brokerage account. The probate court's holding that Butler Wick was properly authorized to convey away the assets in Guzay's brokerage account without obtaining an order from the probate court, as superior guardian, is in direct conflict with this court's prior holding in *Art v. Erwin.*

▮ The probate court erred in holding that Davis Erwin, as court-appointed guardian of Guzay, had the authority to ratify Butler Wick's transfer of custody of Guzay's brokerage account to NFS and/or Eisner.

{¶ 19} Because they are interrelated, we will address Ohio Casualty's first and second assignments of error together. By these assignments of error, Ohio Casualty argues that the probate court erred in granting summary judgment to Butler Wick and denying it summary judgment. We agree.

{¶ 20} Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶ 21} Pursuant to R.C. 2109.50, a person interested in a trust estate may file a complaint in the probate court with jurisdiction over the trust estate "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate." R.C. 2109.52 provides:

When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine * * * whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys, chattels, or choses in action of the trust estate. If such person is

found guilty, the probate court shall assess the amount of damages to be recovered or the court may order the return of the specific thing concealed or embezzled or may order restoration in kind.

The proceedings delineated in R.C. 2109.50 et seq., "facilitate the administration of estates by summarily bringing into them those assets which rightfully belong there." *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraph two of the syllabus.

{¶ 22} Culpability under R.C. 2109.52 turns upon whether the defendant has unauthorized possession of an estate asset or in some way has impermissibly disposed of an estate asset. *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 35, quoting *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 407, 629 N.E.2d 500. A financial institution impermissibly disposes of an estate asset if it conveys an estate asset in its possession to an unauthorized individual. *Art*, 183 Ohio App.3d 651, 2009-Ohio-4306, 918 N.E.2d 207, at ¶ 15; *Rinehart v. Bank One, Columbus, N.A.* (1998), 125 Ohio App.3d 719, 728, 709 N.E.2d 559. To prove a financial institution's culpability under R.C. 2109.52 for such an action, the interested party must establish three elements: (1) the financial institution made a conveyance (2) of assets belonging to the trust estate (3) to a party unauthorized to take possession of the assets. *Art* at ¶ 15; *In re Estate of Popp* (1994), 94 Ohio App.3d 640, 647, 641 N.E.2d 739.

{¶ 23} In the case at bar, the parties do not dispute that Butler Wick made a conveyance of assets belonging to Guzay's estate. As established by the uncontested evidence, Guzay owned securities and cash held in a Butler Wick brokerage account that became part of her estate when the probate court instituted the guardianship. In December 1997 and January 1998, Butler Wick conveyed away those estate assets by transferring them to NFS account number CHW–033839. The only question in dispute, therefore, is whether Butler Wick conveyed the estate assets to a person who was not authorized to take possession of them.

{¶ 24} To resolve this question, we must first determine who took possession of the transferred estate assets. The evidence shows that Butler Wick transferred securities and cash from a brokerage account held in the name of "Katherine A. Guzay" to an NFS brokerage account held in the name of "Davis A. Erwin, Guardian for Katherine A. Guzay." Thus, Davis, acting as her mother's guardian, took possession of the transferred estate assets.

{¶ 25} Next, we must determine whether Davis, as Guzay's guardian, was authorized to take possession of the transferred estate assets. R.C. 2111.50 sets forth the parameters of a guardian's authority to act on behalf of a ward. That statute deems the probate court the superior guardian of all wards who are

subject to its jurisdiction. R.C. 2111.50(A)(1). As superior guardian, the probate court, subject to some exceptions, has "all the powers that relate to the person and estate of the person and that he could exercise if present and not * * * under a disability." R.C. 2111.50(B). As a general matter, the probate court may confer on a guardian any power that R.C. 2111.50(B) grants the probate court in connection with wards. R.C. 2111.50(A)(2)(b). However, a guardian does not possess complete dominion over the ward. *In re Guardianship of B.I.C.*, 9th Dist. No. 09CA0002, 2009-Ohio-4800, 2009 WL 2918562, ¶ 15. Rather, "the control of a guardian over the person, the estate, or both of his ward is limited to the authority that is granted to the guardian by the Revised Code, relevant decisions of the courts of [Ohio], and orders or rules of the probate court." R.C. 2111.50(A)(2)(a). See also *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 53 ("Because the probate court is the superior guardian, the appointed guardian is simply an officer of the court subject to the court's control, direction, and supervision").

{¶ 26} Both the letters of guardianship and the rules of the probate court limit a guardian's authority to take possession of estate funds held in the name of the ward. As we stated above, the letters of guardianship that the probate court issued Davis state that "[f]unds being held in the name of the within named ward shall not be released to the Guardian without a Court Order directing release of a specific fund and amounts thereof." This prohibition supplements Loc.R. 66.3 of the Franklin County Court of Common Pleas, Probate Division, which provides that "[f]unds in the name of the ward shall not be released to the guardian without a specific court order." Because both court orders and court rules bind a guardian, Davis had an obligation to ensure compliance with the order and rule in carrying out guardianship business. See R.C. 2111.14(D) (imposing on guardians of the estate the duty "[t]o obey all orders and judgments of the courts touching the guardianship"). Consequently, without a specific court order, Davis lacked the authority to seek the release or take possession of funds held in Guzay's name. Despite this restriction on Davis's authority, Davis never secured a probate court order permitting the release of the assets from the Butler Wick account, which was held solely in Guzay's name. Davis, therefore, did not have authority to take possession of the estate assets after their release and transfer.

{¶ 27} In arguing otherwise, Butler Wick contends that the letters of guardianship do not curtail Davis's authority as guardian. Butler Wick asserts that the letters of guardianship are merely a legal form and thus that they have no legal power. We reject this contention. Letters of guardianship are no mere formality; without them "[n]o act or transaction by a fiduciary is valid." R.C. 2109.02. Although Sup.R. 51 prescribes a standard probate form for letters of guardianship, once that form is completed and signed by a probate judge, the result is an

enforceable court order. Consequently, the letters of guardianship control and limit Davis's authority as guardian.

{¶ 28} Next, Butler Wick argues that even if the letters of guardianship are an enforceable court order, the language of that order does not impose a duty on financial institutions to control disbursements to a guardian. Butler Wick relies on *Rinehart* for this proposition. In *Rinehart*, a successor guardian pursued an R.C. 2109.50 concealment action against a bank that held an account in the name of the guardianship. The successor guardian asserted that the bank impermissibly conveyed away funds belonging to the ward when it permitted the prior guardian to withdraw funds from the guardianship account for his own purposes. In part, the successor guardian based this assertion on the prohibition contained in the letters of guardianship against release of funds held in the ward's name absent a specific court order. The probate court decided the action in the bank's favor, finding that the prohibition contained in the letters of guardianship "may impose a restriction upon withdrawals from a custodial account in the name of the *ward*, [but] it would not apply to funds held in the name of *guardianship*, as in the [instant] case." (Emphasis sic.) 125 Ohio App.3d at 729, 709 N.E.2d 559. Deferring to the probate court's interpretation of the letters of guardianship, we held that the letters did not require the defendant bank to police the disbursement of funds from an account held in the name of a guardianship.

{¶ 29} Thus, in *Rinehart*, this court concluded that guardianship letters' prohibition on the release of funds does not prevent a guardian from withdrawing funds from an account in the name of the guardianship. However, the account at issue here was held in the name of the ward, not the guardianship. *Rinehart*'s holding, therefore, has no applicability to the case at bar. *Rinehart* bears on this case only to the extent that this court adopted the probate court's conclusion that the prohibition in the letters of guardianship "may" restrict a guardian from withdrawing funds from an account in the ward's name without a specific court order. In this decision, we advance the probate court's ruling one step further and hold that the letters of guardianship *do* preclude such an action.

{¶ 30} Finally, Butler Wick urges this court to ignore the letters of guardianship and Loc.R. 66.3 because it "never received a copy of the Letter[s] of Guardianship, nor any other notice of the guardianship's creation." The evidence belies Butler Wick's claim that it lacked any notice. In the "Asset Detail Report as Deliverer" that Butler Wick received before transferring Guzay's assets, the customer name is listed as "Katherine A. Guzay C/O Davis A. Erwin." This indication that Davis was in "care of" Guzay should have alerted Butler Wick to the existence of a guardianship.

{¶ 31} In sum, because Davis lacked the authority to take possession of assets transferred from her mother's Butler Wick account, we conclude that the evidence establishes that Butler Wick is culpable for conveying away estate

assets under R.C. 2109.52. Accordingly, we sustain Ohio Casualty's first and second assignments of error to the extent that they assert that the probate court erred in concluding otherwise.

{¶ 32} By its third assignment of error, Ohio Casualty argues that the probate court erred in holding that Davis ratified the transfer of assets from Butler Wick to NFS that her husband initiated. The probate court reached this holding in response to Ohio Casualty's argument that Davis did not know about the transfer. However, Davis's knowledge or lack thereof has no relevance to a determination of Butler Wick's culpability under R.C. 2109.52. As we stated above, to establish Butler Wick's culpability, Ohio Casualty had to prove that (1) Butler Wick made a conveyance (2) of assets belonging to the trust estate (3) to a party unauthorized to take possession of the assets. *Art,* 183 Ohio App.3d 651, 2009-Ohio-4306, 918 N.E.2d 207, at ¶ 15; *Popp,* 94 Ohio App.3d at 647, 641 N.E.2d 739. Because Ohio Casualty established these three elements, it is entitled to summary judgment. We thus find that the third assignment of error is moot, and we decline to address it.

{¶ 33} For the foregoing reasons, we sustain Ohio Casualty's first and second assignments of error to the extent noted above, and we find Ohio Casualty's third assignment of error moot. We reverse the judgment of the Franklin County Court of Common Pleas, Probate Division, and we remand this case to that court for further proceedings consistent with law and this decision.

Judgment reversed
and cause remanded.

FRENCH and CONNOR, JJ., concur.